NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

LEAH M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, K.M., *Appellees.*

No. 1 CA-JV 19-0114
FILED 11-26-2019

Appeal from the Superior Court in Maricopa County
No. JD29587
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Kent E. Cattani and Judge James B. Morse Jr. joined.

_____

**C R U Z**, Judge:

¶1   Leah M. ("Mother") appeals the juvenile court's order terminating her parental relationship to her child, K.M. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2   K.M. was born August 2017, and tested positive for marijuana at birth. The Department of Child Safety ("DCS") developed a safety plan with Mother in which Mother and K.M. would live with K.M.'s maternal grandmother, who would act as a safety monitor. DCS additionally recommended that Mother receive a substance-abuse assessment, counseling, and drug testing. However, shortly after K.M.'s birth, Mother absconded with K.M.

¶3   In September 2017, DCS filed a dependency petition, alleging that K.M. was dependent as to Mother because of Mother's history of substance abuse, including heroin and methamphetamine. The petition also alleged that K.M. tested positive for cannabinoids at birth, Mother failed to participate in services, and Mother had absconded with K.M. Two dependency hearings were held, and Mother did not attend either one. The court granted DCS' petition and issued a pickup order for K.M. In April 2018, law enforcement located K.M., and she was taken into DCS' custody and placed in a foster home.

¶4   DCS offered Mother various services, including substance-abuse treatment, substance-abuse testing, psychological evaluation after thirty days of sobriety, parent-aide services, supervised visitation, case-aide services, and transportation. Mother did not participate in any services in May, June, or July 2018, but she began services with a parent aide and was referred to Terros for substance-abuse treatment in August 2018.

¶5   Mother cancelled a skills session and a visit with K.M. that same month, and her Terros referral was closed out unsuccessfully because of Mother's lack of contact. Mother did not participate in any other services

at that time, and in September 2018, Mother was placed on call-to-confirm status after missing half of her skills sessions and missing nearly half of her visitation appointments.

¶6            The case plan was then changed to severance and adoption and in October 2018, DCS moved to terminate Mother's parental rights. Nevertheless, Mother's participation in services did not improve. Mother continued to miss nearly half of her skills sessions and visitation appointments, and she again failed to participate in drug testing. Mother also missed two "Report and Review" hearings.

¶7            The initial severance hearing took place in November 2018. The court ordered DCS to re-refer Mother for any outstanding services that may have lapsed. Mother then engaged in drug testing in November 2018, and she tested consistently until January 2019. Although the test results indicated that Mother regularly tested negative for substances, she missed five tests and submitted diluted samples for two others. Mother was again referred to Terros in December 2018, although Terros concluded that she did not meet the criteria for drug treatment, based in part on Mother's own statements. Beginning in January 2019, Mother tested positive for alcohol, and she continued to test positive for alcohol at each subsequent test except one.

¶8            At a hearing in January 2019, the court ordered DCS to assign a new parent aide if Mother attended all visits for a month. The parent aide recommended that Mother receive a second referral for parent-aide services should she maintain consistency in her supervised visits. The record does not indicate this occurred, and Mother never received a second referral. In January 2019, Mother was closed out of parent-aide services because of her inconsistent attendance with skills sessions and visitations. A case aide continued to provide supervised visitation between K.M. and Mother, although the record does not reflect the precise number of visits facilitated by the case aide.

¶9            Mother's case manager submitted a referral for counseling for Mother, but DCS denied the referral and required Mother to self-refer. Mother self-referred for counseling services and completed an intake in February 2019. Mother did not submit counseling records to substantiate her engagement with counseling services.

¶10            The termination hearing was held in March 2019. The court entered an order terminating Mother's parental rights as to K.M. based on

six-months' time-in-care. *See* Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(b).

¶11 Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235, 12-120.21(A)(1), and 12-2101(A)(1).

**DISCUSSION**

¶12 The juvenile court may terminate a parent-child relationship if it finds at least one statutory ground for severance under A.R.S. § 8-533(B), and that termination is in the child's best interests. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). We accept the court's factual findings if reasonable evidence supports them and will affirm its severance ruling unless it is clearly erroneous. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3, ¶ 9 (2016).

¶13 Mother argues that the superior court erred by finding that DCS made a diligent effort to provide her with appropriate reunification services as is required before parental rights can be severed on grounds of time in out-of-home placement. A.R.S. § 8-533(B)(8); *see also Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999) (stating DCS must show it made "all reasonable efforts to preserve the family relationship").

¶14 The record supports the court's finding. Mother was offered numerous services, including parent-aide services, case-aide services, drug testing, substance-abuse assessment and treatment, case management services, and transportation. Nevertheless, Mother chose to abscond with K.M., which the court found was a "willful act to avoid [DCS] involvement" from August 2017 through April 2018. When K.M. was taken into care in April 2018, Mother did not participate in services until August 2018, and even after this point, Mother's participation was largely inconsistent.

¶15 Mother missed about half of her scheduled visits and skill sessions. Due to Mother's inconsistent attendance, her visits were placed on a call-to-confirm basis until she was closed out unsuccessfully from parent-aide services. Mother participated inconsistently in drug testing, including delaying testing, missing five tests, and submitting two diluted tests, and beginning in January 2019, she tested positive for alcohol. Given the totality of the circumstances as reflected on this record, we cannot find clear error.

¶16 Mother argues that DCS was not diligent in regard to Mother's counseling services and that it was not diligent in providing a

psychological evaluation after thirty days of sobriety. The court found DCS improperly required Mother to self-refer for counseling and that it "miss[ed] a window" where it should have submitted a referral for a psychological evaluation. However, the court found these mistakes to be inconsequential.

**¶17** Having found that DCS should have referred Mother for counseling, the court did not consider Mother's lack of engagement in counseling in considering termination. While Mother argues this shows the court did not consider the totality of the circumstances, the court weighed DCS' failure to refer mother to counseling services, against Mother's willful avoidance of DCS for nearly a year, her refusal to begin substance-abuse treatment and testing for a year and a half, and her poor attendance with visitation and skills services. We will not reweigh that evidence, because "[t]he juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) (citation omitted).

**¶18** Likewise, while the court found that DCS should have submitted a referral for a psychological evaluation in January 2019, the court found that the "utility of the test was obviated by Mother's commencement of positive tests for alcohol use." While DCS must provide a parent "with the time and opportunity to participate in programs designed to help her become an effective parent," it "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994) (citations omitted).

**¶19** Mother also argues that DCS failed to re-refer her for a fourth substance-abuse assessment and submit a second referral for a parent aide. DCS had already referred Mother to Terros on three prior occasions and informed Mother that she could obtain a second parent aide by attending her visitation appointments for a month. Nevertheless, Mother continued to demonstrate inconsistency and her subsequent visitation attendance was very poor. DCS need not leave "the window of opportunity for remediation open indefinitely." *Maricopa Cty. Juv. Action No. JS-501568*, 177 Ariz. 571, 577 (App. 1994). DCS gave Mother adequate and reasonable opportunity to participate in services, and Mother failed to take advantage.

**¶20** The record thus supports the court's finding that DCS made diligent efforts to provide Mother with appropriate reunification services.

**CONCLUSION**

**¶21** We affirm the juvenile court's order terminating the parental relationship between Mother and K.M.



AMY M. WOOD • Clerk of the Court
FILED: AA